## AUTOMOBILE UNDERWRITERS OF DES MOINES, IOWA, v. BLOEMER.
### No. 11014.

Circuit Court of Appeals, Eighth Circuit.
Feb. 7, 1938.

Neill Garrett, of Des Moines, Iowa (George B. Boland, of Omaha, Neb., and R. C. Waterman and Gibson, Stewart & Garrett, all of Des Moines, Iowa, on the brief), for appellant.

Paul J. Garrotto, of Omaha, Neb., for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

The question involved in this case is whether an insurance policy issued by the appellant to one Lauren Goodman was in effect on the 26th day of April, 1935, when he struck and injured appellee in Omaha, Neb. It is claimed by the insurance company that the policy lapsed on April 20, 1935, six days prior to the accident. The appellee recovered a judgment against Goodman for $12,000 in the state court of Nebraska, and, failing to collect the judgment from Goodman, brought this action against appellant as the judgment creditor of Goodman. No question is raised as to the right of appellee to maintain an action of this character. In the instant action, appellee, as plaintiff below, had judgment on a directed verdict, and the only question is whether the court erred in granting her motion and in denying a like motion interposed by defendant.

Defendant is an association made up of various subscribers for membership therein, who exchange insurance with each other through a common attorney in fact, and such subscribers agree with each other to pay for insurance, and they buy from each other only the insurance they pay for. The association resembles a mutual insurance company.

Goodman made application for insurance September 5, 1933, and by his application sought membership in the association and appointed the Automobile Underwriters as his attorney in fact, to exchange insurance with other subscribers, as provided by the Iowa statute. Code Iowa 1935, § 9083 et seq. In his application he requested the insurance company to file with the Railroad Commission of Iowa, in connection with his Iowa truck operator's permit, a continuous three-year installment insur-ance policy. He paid his quarterly premiums until March 5, 1935, at which time a $10 premium was due. Written notice was mailed him on February 23, 1935, advising him that $10 was due on March 5, 1935, and that he would have no insurance after that date unless payment of this premium were made. He failed to pay that installment, and was mailed and received a notice that his policy had lapsed and that he had no insurance after noon March 5, 1935. On March 25, 1935, he sent in $5 on this installment, and his policy was thereupon reinstated. On April 10th following, a notice was mailed to him that a $5 premium was due and payable on April 20, 1935, and that, unless this payment were made, his insurance would be ineffective after that date. This premium was not paid, and on April 20th the association mailed him a notice that his policy had lapsed as of noon on that date for failure to pay the premium, and that his insurance had terminated.

The policy contained provision that: " * * * the failure of the Assured to advance the premium or premiums on the due dates thereof, shall cause this policy to automatically lapse for non-payment of premium, provided, however, that this policy shall not be lapsed for non-payment of premium until ten days after notice of amount of premium and the due date thereof has been mailed to Assured at his last known address as shown by the books of the Association, or delivered to him personally, whether such notice comes from the Home Office of this Association or through its agents, and the Assured shall forfeit all his rights in the Association, including claims for losses subsequently incurred by him. * * * "

In support of her right to an instructed verdict, plaintiff contends (1) that, by reason of a stipulation contained in an endorsement on the policy required by the State Board of Railroad Commissioners of the State of Iowa, sufficient notice had not been given to lapse the policy; and (2) that under the provisions of the policy proper it had not lapsed, but was in effect on April 26, 1935, the date of the accident.

1. We shall first consider the contention that, because of the stipulation contained in an endorsement on the policy required by the rules and regulations of the State Board of Railroad Commissioners of the State of Iowa, sufficient notice had not been given to lapse the policy.

The statutes of Iowa empowered and authorized its Railroad Commission to prescribe rules and regulations applicable to all truck operators, and the law made it unlawful to operate a truck on the public highways in that state without first having obtained a permit, and the law further provided, as a condition precedent to the issuance of a permit, that an insurance policy be filed with the commission. Pursuant to this power and authorization, the Iowa Railroad Commission adopted rules and regulations covering the operation of public motortrucks in Iowa, and among other things it prescribed a form of endorsement to be attached to the insurance policy required to be filed with the application for permit to operate a truck. There was accordingly attached to the policy in question such an endorsement, which, among other things, provided as follows:

"It is understood and agreed that:

"If this Association pays under the provisions of Iowa Motor Carrier Endorsement and the Iowa Truck Operator Endorsement set out below any loss or claim which has resulted directly or indirectly from a violation or breach of any of the provisions of the policy or any endorsement now or hereafter attached thereto, or from any loss not covered therein, the named assured agrees to reimburse the Association to the extent of such loss or claim paid.

"*The provisions of the Iowa Motor Carrier endorsement and the Iowa Truck Operator Endorsement set out below shall be effective only while the equipment covered by the policy is being operated within the State of Iowa subject to the provisions of Chapters 252-A1 and 252-C1, Code of Iowa, 1931.*" (Italics supplied.)

The endorsement also contained provision that before the policy "may be suspended or cancelled, the Board of Railroad Commissioners, Des Moines, Iowa, will be given fifteen (15) days' prior written notice of such proposed suspension or cancellation." The endorsement contained a number of further provisions, including the following: "*The obligations and promises of this endorsement shall be effective only while the equipment covered by this policy is being operated within the State of Iowa under the provisions of Chapter 252-C1, of the Code of Iowa, 1931.*" (Italics supplied.)

It will be remembered that the accident did not happen on the highways of Iowa, but in the City of Omaha; but at the time of the accident, confessedly, the Board of Railroad Commissioners of the State of Iowa had not been given fifteen days' prior written notice of suspension or cancellation of the policy.

Briefs of counsel discuss the question as to what, if any, extraterritorial effect may be given the Iowa statutes and the rules and regulations adopted pursuant thereto by the Board of Railroad Commissioners of that state. We are of the view that this question is not presented by the record because neither the Iowa statutes nor the rules and regulations referred to purport on their face or otherwise to have any extraterritorial effect, and the endorsement on the policy in question is specifically limited to the State of Iowa. According to this endorsement, "the obligations and promises of this endorsement shall be effective only while the equipment covered by this policy is being operated within the State of Iowa." The Iowa commission doubtless had power over the public highways of Iowa and had the right to make provision for protection of the traveling public in that state. Whether it might go beyond the state is not here presented because it has not attempted so to do.

In Sprout v. City of South Bend, 277 U. S. 163, 48 S.Ct. 502, 505, 72 L.Ed. 833, 62 A.L.R. 45, the court refers to the power of the state over the public highways within its borders. It is there said: "There being grave dangers incident to the operation of motor vehicles, a state may require users of such vehicles on the public highways to file contracts providing adequate insurance for the payment of judgments recovered for certain injuries, resulting from their operation. * * * Such provisions for insurance are not, even as applied to busses engaged exclusively in interstate commerce, an unreasonable burden on that commerce, *if limited to damages suffered within the state by persons other than the passenger.*" (Italics supplied.)

It may well be conceded that as between the insurance company and the State of Iowa, or the persons for whose benefit the regulation was adopted or promulgated with the force and effect of law, cancellation of this policy could not be effected without complying with the provisions of this endorsement. But, as before observed, neither the Iowa statute, the rules and regulations adopted and promulgated by its Railroad Commission, nor the endorsement upon this policy, purport to have any extra-

territorial effect. The question as to whether the insurance had been lapsed as to any injury or damage that might have been inflicted by this truck while operating upon a public highway in the State of Iowa is purely academic.

■ 2. Under the general provisions of the policy, exclusive of those contained in the endorsement required by the Iowa Railroad Commission, had the policy lapsed for nonpayment of premium prior to April 26, 1935? The policy by its terms automatically lapsed on failure of the insured to pay the premiums on the due date. However, this did not result "until ten days after notice of amount of premium and the due date thereof has been mailed to the assured." In addition to this method of rendering the policy ineffectual, the company had the right to cancel it at any time on five days' notice, as provided in the policy. The premiums were payable in quarterly installments of $10 each, and the due dates were December 5, March 5, June 5, and September 5. It appears that the premium due March 5, 1935, was not paid on that date, and by the terms of the policy, notice having been given in accordance therewith, the insurance lapsed. On March 25, 1935, however, insured paid $5, and the attorney in fact of the insurance company, as authorized by the provision of the policy which reads as follows: "But any delinquent assured may be reinstated on such terms and conditions as may be agreed upon in writing signed by the Attorney," reinstated the policy, placing thereon an endorsement as follows: "It appearing that the policy to which this endorsement is attached was canceled effective as of 8:00 A. M. March 21, 1935, it is understood and agreed that said policy is hereby reinstated to become effective as of noon, March 26, 1935."

■ While the attorney in fact could doubtless have inserted a condition in the reinstatement of the policy to the effect that, if an additional $5 were not paid by the insured by April 20, 1935, the policy would then lapse and be of no force and effect, he did not do so, but reinstated the policy unconditionally. Now, the next premium due date was June 5, 1935. Notice was given, advising the insured that $5 would be due April 20, 1935, and that the insurance would be of no force and effect after noon of that date; but this was not a due date under the terms of the policy, and the only provision for lapsing the policy refers to a failure to advance the premium "on the due dates." The policy was doubtless subject to cancellation for failure to pay the balance of the $10 premium, but no cancellation notice was ever given, and no attempt was made to cancel the policy, other than that which purported to bring about an automatic lapse for failure to pay premium. This manifestly was not intended as a cancellation notice. It was the same character of notice as had been regularly given announcing the due dates for payment of premium.

■ While this is not the ground upon which the lower court directed a verdict for plaintiff, still it is incumbent upon defendant, to entitle it to a reversal, to show prejudicial error. If plaintiff were entitled to a directed verdict, the fact that the court may have given an erroneous reason for so doing does not render the court's action prejudicial error.

We conclude that the policy, not having been lapsed for failure to pay premium on the due dates named therein, and not having been canceled by any effective notice, was in full force and effect on April 26, 1935, at the time the insured had his accident in the city of Omaha, inflicting injury on the plaintiff. The court therefore correctly directed a verdict for the plaintiff, and the judgment appealed from is affirmed.