## COMMERCIAL CREDIT CORPORATION
## v. UNITED STATES.

### No. 13884.

United States Court of Appeals
Eighth Circuit.

June 30, 1949.

Arthur M. Clure, Duluth, Minn. (McCabe, Gruber, Clure, Donovan & Crassweller, Duluth, Minn., on the brief), for appellant.

William P. Murphy, Assistant United States Attorney, St. Paul, Minn. (John W. Graff, United States Attorney, St. Paul Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS and RIDDICK, Circuit Judges.

GARDNER, Chief Judge.

This was a proceeding brought by the United States as libelant against one 1941 Pontiac Station Wagon, seeking a forfeiture pursuant to Sections 3116 and 3250, Title 26 U.S.C.A. Chester E. LeDoux, the owner of the car, entered a plea of guilty to dealing in intoxicating liquor in violation of Title 26 U.S.C.A. § 3253. During the time he was so dealing he used the station wagon in question for transporting intoxicating liquor in substantial quantities in Minnesota. Appellant intervened and filed claim and petition for remission or mitigation of forfeiture pursuant to the provisions of Section 646, Title 18 U.S.C.A., now Sec. 3617, Title 18 U.S.C.A. On trial the court made findings of fact and conclusions of law determining the issues in favor of the government and on July 16, 1947, entered a decree of forfeiture. No notice of the filing of the decree was given to claimant or its attorneys by the clerk of the court, and neither claimant nor its attorneys learned of the making or entry of the decree until January 22, 1948. On January 28, 1948, counsel for claimant moved to set aside the decree and for an order amending the findings and conclusions so as to provide for granting a remission of the forfeiture. This motion was denied. Thereafter claimant moved the court to vacate its decree and to reenter the same in order to permit an appeal. This motion was filed June 9, 1948, was heard July 2, 1948, and denied October 28, 1948. On November 11, 1948, claimant filed notice of appeal from this order. It seeks reversal on the following grounds: (1) the court erred in refusing to grant the relief requested by its motion to enter an appealable judgment or in lieu thereof to vacate the decree and reenter the same so that a timely appeal could be had; (2) the court erred in refusing to grant the remission of forfeiture sought in the case in that the findings of fact, conclusions of law and judgment of forfeiture are not sustained by the evidence and are contrary to law. The facts are not in dispute and were either stipulated in writing or shown by undisputed evidence.

At the time these proceedings were had Rule 77(d) of the Rules of Civil Procedure, 28 U.S.C.A. provided as follows: "(d) Notice of Orders or Judgments. Immediately upon the entry of an order or judgment the clerk shall serve a notice of the entry by mail in the manner provided for in Rule 5 upon every party affected thereby who is not in default for failure to appear, and shall make a note in the docket of the mailing. Such mailing is sufficient notice for all purposes for which notice of the entry of an order is required by these rules; but any party may in addition serve a notice of

such entry in the manner provided in Rule 5 for the service of papers."[1]

 The notice required by this rule was not given and neither plaintiff nor his counsel knew of the entry of the findings, conclusions or forfeiture judgment until after the time for appeal had expired. Claimant had a statutory right to appeal but an appeal could, of course, not be perfected until judgment had been entered. Counsel were, we think, warranted in assuming that the clerk would perform his duty and serve notice of entry of judgment or order in this case as provided by Rule 77(d). In this view of the situation claimant was deprived of its statutory right of appeal without any fault or neglect on the part of itself or its counsel. This rule had the force and effect of law. Courts favor the right of appeal where appeal is allowed by statute.

A very similar situation was presented to the Supreme Court in Hill v. Hawes, 320 U.S. 520, 64 S.Ct. 334, 335, 88 L.Ed. 283, 149 A.L.R. 736. In that case no notice of the entry of judgment had been served and after the time for appeal had expired a motion was filed to enter judgment and to direct the clerk to notify the parties. This motion was denied but in the meantime the court ordered the judgment vacated "for the reason that the clerk failed under Rule 77(d) of the Rules of Civil Procedure to serve a notice of the entry of judgment by mail on the plaintiff." On the same date the court signed and filed a second judgment, identical with the one which had been vacated except as to date. Following this proceeding appellant filed a notice of appeal from this judgment. On motion the appeal was dismissed. In considering this question, in an opinion by Mr. Justice Roberts, the court said:

"The respondent urges that the vacation of the judgment of May 7, and the entry of a new judgment on June 13, amounted merely to an attempted extension of the time for appeal; that judgment was duly entered and became final on May 7; that the clerks' neglect to comply with Rule 77 (d) in the matter of notice does not affect its validity or its finality, and that the notice of appeal of June 14 was consequently out of time and the court below properly dismissed the appeal on that ground. We cannot agree.

"It is true that Rule 77(d) does not purport to attach any consequence to the failure of the clerk to give the prescribed notice; but we can think of no reason for requiring the notice if counsel in the cause are not entitled to rely upon the requirement that it be given. It may well be that the effect to be given to the rule is that, although the judgment is final for other purposes, it does not become final for the purpose of starting the running of the period for appeal until notice is sent in accordance with the rule. The Federal Rules of Civil Procedure permit the amendment or vacation of a judgment for clerical mistakes or errors arising from oversight or omission and authorize the court to relieve a party from a judgment or order taken against him through his mistake, inadvertence, surprise or excusable neglect. See Rule 60(a) (b). These rules do not in terms apply to the situation here present, as the court below held. But we think it was competent for the trial judge, in the view that the petitioner relied upon the provisions of Rule 77(d) with respect to notice, and in the exercise of a sound discretion, to vacate the former judgment and to enter a new judgment of which notice was sent in compliance with the rules. The term had not expired and the judgment was still within control of the trial judge for such action as was in the interest of justice to a party to the cause."

 Claimant's right of appeal was an absolute one which did not require allowance by the trial court, nor did it depend upon the views of the trial court as to its merits. The application to vacate and reenter was, to be sure, addressed to the discretion of the trial court but that discretion was a judicial discretion and not an arbitrary one. Under the undisputed facts and circumstances disclosed by the record we are of the view that it was an abuse of discretion to deny claimant's motion.

---

[1] This rule was later amended by an amendment which became effective March 19, 1948, the amendment doing away with the requirement of notice.

■. It is therefore necessary to consider whether the procedural error was prejudicial to the substantial rights of claimant and that leads us to a consideration of the second ground urged for reversal. Error is not ground for reversal unless it be prejudicial. It is a well settled rule of appellate procedure that in order to warrant a reversal the error complained of must have been prejudicial to the substantial rights of the appellant. In re Schulte-United, 8 Cir., 59 F.2d 533; Marin v. Ellis, 8 Cir., 15 F.2d 321; Automobile Underwriters of Des Moines, Iowa, v. Bloemer, 8 Cir., 94 F.2d 474.

■ The statute under which claimant sought relief, so far as here material, reads as follows:

Section 646, Title 18 U.S.C.A., Now Section 3617, Title 18 U.S.C.A.: "Remission or mitigation of forfeitures under liquor laws; possession pending trial.—

"(a) Jurisdiction of court. Whenever, in any proceeding in court for the forfeiture, under the internal-revenue laws, of any vehicle or aircraft seized for a violation of the internal-revenue laws relating to liquors, such forfeiture is decreed, the court shall have exclusive jurisdiction to remit or mitigate the forfeiture.

"(b) Conditions precedent to remission or mitigation. In any such proceeding the court shall not allow the claim of any claimant for remission or mitigation unless and until he proves (1) that he has an interest in such vehicle or aircraft, as owner or otherwise, which he acquired in good faith, (2) that he had at no time any knowledge or reason to believe that it was being or would be used in the violation of laws of the United States or of any State relating to liquor, and. (3) if it appears that the interest asserted by the claimant arises out of or is in any way subject to any contract or agreement under which any person having a record or reputation for violating laws of the United States or of any State relating to liquor has a right with respect to such vehicle or aircraft, that, before such claimant acquired his interest, or such other person acquired his right under such contract or agreement, whichever occurred later, the claimant, his officer or agent, was informed in answer to his inquiry, at the headquarters of the sheriff, chief of police, principal Federal internal-revenue officer engaged in the enforcement of the liquor laws, or other principal local or Federal law-enforcement officer of the locality in which such other person acquired his right under such contract or agreement, of the locality in which such other person then resided, and of each locality in which the claimant has made any other inquiry as to the character or financial standing of such other person, that such other person had no such record or reputation."

The Act then provides that if the claimant has complied with the procedural requirements, he is entitled to have the forfeiture remitted or mitigated.

The statute is remedial and should be liberally construed. City Nat. Bank & Trust Co. of Oklahoma City, Okl., v. United States, 8 Cir., 163 F.2d 820; United States v. One 1936 Model Ford Coach, 307 U.S. 219, 59 S.Ct. 861, 83 L.Ed. 1249.

■ It appears that prior to June 4, 1946, an automobile dealer in the village of Hibbing, Minnesota, sold the vehicle in question to Chester E. LeDoux, who resided in Virginia, St. Louis County, Minnesota, for the sum of $1,443. LeDoux paid $675 in cash, leaving a balance of $907.35, which included insurance and finance charges. This sum was payable in monthly installments of $60.49. The balance of the purchase price was represented by a conditional sales contract or chattel mortgage, and claimant in due course purchased the paper, on which at the time in question there was a substantial balance due. Claimant maintained an office in Hibbing and other points in Minnesota. Immediately after purchasing the vehicle LeDoux used it to transport whiskey in connection with his illicit business and continued to so use it up to the time of its seizure by Federal officers. On December 3, 1946, he entered a plea of guilty to an information charging him with having carried on the business of a retail liquor dealer during the period from January 1, 1946 to October 16, 1946, without having paid the Federal tax required by law. During the times in question he resided in the City of Virginia, Minnesota.

At the trial of this proceeding a member of the Police Department of the City of Virginia identified LeDoux as a person whom he had known for some years as being engaged in "placing slot machines and nickelodeons in different taverns and saloons." He testified that in June, 1946, LeDoux had the reputation in the City of Virginia and community of being a violator of the laws of the United States relating to intoxicating liquor. A police officer in the village of Hibbing, at which the automobile was purchased and where claimant maintained an office, testified that LeDoux was under surveilance as a suspect in connection with the robbery of two liquor stores; that he had the reputation of violating the laws of the United States and of the State of Minnesota relating to intoxicating liquor. An Alcohol Tax Unit agent of the Treasury Department, of many years experience, whose territory included the village of Hibbing and the City of Virginia and other surrounding towns in Minnesota, testified that LeDoux had the reputation of being a liquor law violator; that this reputation was not confined to police circles; that his knowledge of LeDoux's reputation was gained not only from his own observations and reports from police officers, but from information received from private citizens.

At the time in question the records in the office of the Sheriff of St. Louis County, Minnesota, and in the office of the Clerk of the United States District Court for the District of Minnesota, Fifth Division, situated at Duluth, did not show any record of conviction of LeDoux in connection with the violation of liquor laws, either of the State of Minnesota or of the United States, but no inquiry was made for or on behalf of claimant at the office of the Police Departments in Hibbing or Virginia, or the United States District Clerk's office in Duluth, or at the Alcohol Tax Unit, prior to the purchase of the contract. No attempt was made by claimant prior to the purchase of the conditional sales contract to comply with the provisions of Section 646 (b) (3), Title 18 U.S.C.A., now Section 3617, Title 18 U.S.C.A. It made only two inquiries with reference to LeDoux. One was addressed to Quality Shop, Virginia, Minne-

sota, dated June 5, 1946, and reads as follows:

"An application for credit by the above person shows that he buys from and refers to you.

"Your answers to the following questions will be appreciated and held in strict confidence.

"We shall be glad to reciprocate at any time.

\* \* \* \* \* \*

"Have sold him how long?

"Highest amount owed you?

"Owing now?

"Payment record?

"Monthly income?"

The other inquiry was made of Palace Clothing, Virginia, Minnesota, and was exactly the same as the foregoing, except for the address. The answers were confined strictly to the questions.

Claimant's manager testified that he did not know LeDoux and had never heard of him prior to the time of purchasing this paper. It is to be observed that the inquiries made went only to the question of LeDoux's financial responsibility. He had heard that LeDoux was in the slot machine business, but apparently no attempt whatever was made to ascertain what business LeDoux was in or whether he had a reputation as a violator of the liquor laws, either among enforcement officers or others. On cross-examination he made reference to the Buyer's Statement, libelant's Exhibit 3, concerning which he was interrogated as follows:

"Q. Now, in this Libelant's Exhibit 3, which is the buyer's statement, does he show what his business and occupation is there? A. Yes—slot machine business.

"Q. He says he is in the slot machine business? A. Right.

"Q. And does he say where he is engaged in that business? A. No, he doesn't say where he is engaged at all.

"Q. Does he say who his employer is? A. No, he doesn't.

"Q. Does he say whether he is working for himself or working for somebody else? A. No, he doesn't.

"Q. Does he give the name of any company that he is working for? A. No, he doesn't.

"Q. Does he give any information as to the use he desires to put this station wagon to? A. No."

No inquiry whatever was made with reference to this man's reputation, nor as to his occupation, and apparently claimant knew nothing of his occupation further than is disclosed by the Buyer's Statement.

Referring now to the conditions precedent to remission or mitigation as provided in Section 646, Title 18 U.S.C.A., now Section 3617, Title 18 U.S.C.A. The record shows that the claimant had an interest in the vehicle which it acquired in good faith. The record also shows that claimant at the time it acquired the conditional sales contract had no knowledge or reason to believe that the vehicle would be used in violation of the laws of the United States or of any state relating to liquor. It did know that LeDoux was in the slot machine business and the evidence shows that he was engaged in "placing slot machines and nickelodeons in different taverns and saloons." Claimant made no effort to comply with subdivision (b) (3), which provides in effect that if the interest of a claimant arises out of a contract with a person having a record or reputation for violating the laws of the United States, or of any state, relating to liquor, that in such case no remission can be had. The question resolves itself into the inquiry as to whether LeDoux had a record or reputation for violating the liquor laws. There was no such record and hence, the inquiry is limited to the question whether LeDoux had a reputation for violating such laws at the time claimant acquired its interest in this vehicle. In City National Bank & Trust Co. of Oklahoma City, Okl., v. United States, supra, which is relied on by appellant, we held that there was no evidence to show that the purchaser of the vehicle there sought to be vacated "had either a record or a reputation for violating any liquor laws at the time the appellant acquired its lien on the automobile." [163 F.2d 821] We held that, "Subsection (b) (3) casts the burden upon the claimant to prove that it made the prescribed inquiry only '(3) if it appears' that the other party to the contract out of which the claimant's interest arises had a 'record or reputation for violating' the liquor laws."

In that case there was no evidence either of record or reputation, and hence, it was not necessary that claimant prove that he had made the inquiry required by Subsection (b) (3). In the instant case, however, the undisputed evidence shows that LeDoux had a reputation as a liquor law violator and the court so found. The government sustained the burden of establishing the reputation mentioned in this statute. As LeDoux had a reputation as a liquor law violator among law enforcement officers and others on the date claimant acquired its contract, we think the court properly denied its right to remission. Interstate Securities Co. v. United States, 10 Cir., 151 F.2d 224; United States v. Ford Truck, 3 Cir., 115 F.2d 864; United States v. McArthur, 5 Cir., 117 F.2d 343; United States v. One 1942 De Soto Coach, D.C., 71 F.Supp. 361; Busic v. United States, 4 Cir., 149 F.2d 794; United States v. One 1941 Cadillac Sedan, 7 Cir., 145 F.2d 296.

When the government in the instant case proved LeDoux's bad reputation, the burden shifted to the claimant to show that it had made inquiry of the law enforcement officers concerning his reputation. Having failed to do so, it was not entitled to remission of forfeiture. The judgment appealed from is therefore

Affirmed.