(C.D. 4160)

INTRA-MAR SHIPPING CORP. *v.* UNITED STATES

United States Customs Court, Second Division

(Dated January 8, 1971)

*Brooks & Brooks* (*Charles P. Deem, Gail T. Cumins,* and *J. Joseph McDermott* of counsel) for the plaintiff.

*L. Patrick Gray, III,* Assistant Attorney General (*Harold L. Grossman,* trial attorney), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

RAO, Chief Judge: This case is before the court upon an order setting aside an order of dismissal and restoring the case to the docket "for the purpose of adducing evidence relative to the service of copies of the court decision and judgment entered on January 24, 1968."

The merchandise involved herein consists of nylon yarn assessed with duty at 50 per centum ad valorem under paragraph 1301 of the Tariff Act of 1930 and claimed to be dutiable at 22½ per centum ad valorem or 25 cents per pound under said paragraph, as modified. Plaintiff contends that similar merchandise was held dutiable at 22½ per centum ad valorem under said paragraph, as modified, in *Chester Tricot Mills, Inc.* v. *United States,* 56 Cust. Ct. 532, C.D. 2695 (1966).

The protest herein appeared on the December 1968 calendar of the Second Division of this court but was not called, apparently because a formal abandonment had been previously filed by counsel for the plaintiff. Pursuant thereto a decision and judgment dismissing the protest was entered on January 24, 1968.

Plaintiff claims that the abandonment was prepared by mistake at a time when certain appeals for reappraisement were being abandoned, but not protests. Plaintiff's attorneys claim further that they never received a copy of the decision and judgment of dismissal; that it was never forwarded by the clerk of the court, and that they had no knowledge of it until October 4, 1968. Thereafter, on November 7, 1968, a motion was made for an order setting aside the dismissal and restoring the case to the calendar. The case is presently before us pursuant to the order issued in consequence of that motion.

The Government argues here, as it did when the motion was made, that this court has no jurisdiction to set aside the judgment, on the

ground that a valid judgment was entered in the manner provided by statute and the rules of this court, with no motion for rehearing or appeal having been filed within the time provided by statute. 28 U.S.C. 2601 and 2640 and Rule 6(a) of the rules of this court then in effect.[1]

The court has held on a number of occasions that it is without jurisdiction to set aside a judgment of dismissal and grant a rehearing after the 30-day period provided for in 28 U.S.C. 2640 and Rule 6(a) has expired. *United States* v. *Williams, Clarke Company*, 52 Cust. Ct. 639, A.R.D. 173 (1964), and cases cited.

Plaintiff claims, however, that the judgment herein was void *ab initio* because of failure to comply with Rule 23(b), which provided that a copy of a judgment order should be forwarded to the parties or their attorneys, citing *Borneo-Sumatra Trading Company, Inc.* v. *United States*, 49 Cust. Ct. 510, A.R.D. 150 (1962), and *Imbert Imports, Inc.* v. *United States*, 58 Cust. Ct. 848, A.R.D. 224 (1967).

In the *Borneo-Sumatra* case, it appeared that no notice of hearing had been mailed to plaintiff's attorneys. It was therefore held that plaintiff had been denied his day in court and that the court had had no power to render a valid judgment. The court held further that, like all courts of record, it had inherent power to set aside and cancel a void judgment and that a motion to vacate such a judgment might be made within a reasonable time.

The *Imbert* case involved a judgment of dismissal entered at a time when plaintiff's attorney had been disbarred from practicing before this court. A copy of the judgment was, however, sent to him and not to plaintiff. Plaintiff became aware of the dismissal some months later and then filed a motion to vacate and set aside the judgment. The court held that the copy sent to the disbarred attorney was in effect no notice at all since he had no standing in court and that plaintiff had been precluded from exercising its substantive right of appeal. Finding that plaintiff had acted with due diligence as soon as it learned of the default judgment, the court vacated and set aside the judgment of dismissal and remanded the case to a single judge for trial on the merits.

The reason for and the effect of a requirement of a notice of entry of judgment in a court rule was well stated in *Hill* v. *Hawes*, 320 U.S. 520, 64 S. Ct. 334, 88 L. Ed. 283 (1944), reh. denied 321 U.S. 801, 64 S. Ct. 515, 88 L. Ed. 1088 (1944), which involved Rule 77(d) of the Federal Rules of Civil Procedure, providing that immediately upon entry of judgment the clerk shall send a notice of entry to the

---

[1] All references to the rules of this court refer to those in effect at the time of entry of the judgment of dismissal.

parties affected. In the case before the court no notice had been sent and, after the time for appeal had expired, the trial judge vacated the judgment and had a second judgment entered. A notice of appeal was filed thereafter. The Supreme Court reversed a judgment of the Court of Appeals for the District of Columbia dismissing the appeal, stating (pp. 523–524):

> It is true that Rule 77(d) does not purport to attach any consequence to the failure of the clerk to give the prescribed notice; but we can think of no reason for requiring the notice if counsel in the cause are not entitled to rely upon the requirement that it be given. It may well be that the effect to be given to the rule is that, although the judgment is final for other purposes, it does not become final for the purpose of starting the running of the period for appeal until notice is sent in accordance with the rule. * * * we think it was competent for the trial judge, in the view that the petitioner relied upon the provisions of Rule 77(d) with respect to notice, and in the exercise of sound discretion, to vacate the former judgment and to enter a new judgment of which notice was sent in compliance with the rules. * * *

See also *Commercial Credit Corporation* v. *United States*, 175 F.2d 905 (1949), where it was held an abuse of discretion to deny a motion to vacate and reenter a judgment where no notice had been given. The court said (p. 907):

> The notice required by this rule [77(d)] was not given and neither plaintiff nor his counsel knew of the entry of the findings, conclusions or forfeiture judgment until after the time for appeal had expired. Claimant had a statutory right to appeal but an appeal could, of course, not be perfected until judgment had been entered. Counsel were, we think, warranted in assuming that the clerk would perform his duty and serve notice of entry of judgment or order in this case as provided by Rule 77(d). In this view of the situation claimant was deprived of its statutory right of appeal without any fault or neglect on the part of itself or its counsel. This rule had the force and effect of law. Courts favor the right of appeal where appeal is allowed by statute.

While Rule 77(d) has since been amended to provide that lack of notice does not affect the time to appeal or authorize the court to relieve a party for failure to appeal within the time allowed, no such amendment has been made to the rules of this court.

We conclude that where no notice of entry of judgment is given to the parties in accordance with Rule 23(b), this court has jurisdiction to set aside and vacate its own judgment.

The issue here is whether the proofs have established that notice of entry was not given in this case.

There is a presumption that letters or other communications, properly addressed, stamped, and deposited in the mail, are received by

the addressee in due course. *Inlander-Steindler Paper Co.* v. *United States*, 45 Cust. Ct. 446, Reap. Dec. 9756 (1960) ; *Charlson Realty Company* v. *United States*, 384 F.2d 434, 442 (1967), and cases cited. That presumption is rebuttable by proof of non-receipt. *United States* v. *International Importers, Inc.*, 55 CCPA 43, 48–49, C.A.D. 932 (1968), and cases cited.

Where a notice is required to be given by customs officials, the burden of going forward with the evidence initially falls upon the plaintiff because the notice is deemed to have been given by virtue of the presumption of regularity which attaches to official acts. However, the burden of proof then is on the Government because it is the Government's statutory responsibility to provide the notice. The proofs offered by a plaintiff at this point are directed toward negating the presumed delivery by way of evidence of non-receipt, non-issuance or non-delivery of the notice. When the plaintiff has met this initial requirement, the burden of going forward shifts to the Government to establish that notice was given. *Plywood & Door Southern Corp.* v. *United States*, 57 Cust. Ct. 309, C.D. 2800 (1966), and cases cited.

Proof of mailing is not *ipso facto* proof that the notice was given to the importer, where the unrefuted testimony is that no notice was received. Recent decisions of this court "have raised the requirements for the Government to prove mailing to a level of specificity where the Government must now produce the precise person who mailed the subject notices." Presumptions in favor of the regularity of an employee's action in mailing notices may fall when the proof establishes that irregularities have occurred in mailing procedures. *United States* v. *International Importers, Inc., supra.*

In the *International Importers* case there was evidence that appellee maintained a separate file for each shipment; that all details of the importation and copies of all customs forms were kept therein; that mail was opened by the witness or his secretary; and that to the best of the witness' knowledge, notices of appraisement had not been received in the case before the court nor was their receipt indicated by the office records. In addition there was evidence of irregularities in the mailing procedures in the collector's office. In some instances, several notices were received in one envelope; in others, notices for another addressee were included. The witness also testified that notices intended for his firm had been misdirected to another and had been forwarded to him by that addressee. The court concluded that the Government had failed to prove that the required statutory notice had been given to the importer.

In another case, *United States* v. *Getz Bros. & Co.*, 55 CCPA 90, C.A.D. 938 (1968), the court found no administrative irregularities where a customs employee testified that he had always personally

mailed the notices on the date stamped on them and that he had used mimeographed copies of the regular customs form furnished by the broker. It was held that the acts of the collector were entitled to the presumption that officials perform their duties as required by law. It was held further that the presumption had not been rebutted by evidence of the broker's employee that office routine required the writing of a covering letter to the broker's "account" on receipt of a notice of appraisement, and that she had checked the files on the date of trial and found no covering letter relating to the matter before the court. She admitted that other persons had access to the files and in fact "pulled" papers from them.

In the instant case plaintiff's proof of non-receipt consists of the testimony of partners or associates of the firm of Brooks & Brooks, attorneys for the plaintiff, all of whom are members of the bar of the Customs Court, and are of course, officers of the court.

Joseph A. Goodyear testified that the first mail that came into the office in the morning was received by him personally and was opened, stamped and reviewed by him. Other mail received during the course of the day was opened by him or someone else but was all turned over to him. Mail for four law firms was received at the office, and he opened the mail for three of them, including Brooks & Brooks. He assigned all mail to the attorney who was handling the particular matter whether correspondence, cases or abandonments. Decisions in abandoned cases were assigned to the attorney in charge of the division involved. Thus, Second Division decisions in abandonment matters were invariably assigned to Miss Gail Cumins. Mr. Goodyear had no recollection of having received a copy of the judgment in the instant case through the mail or of having any record of it. Had he received it, it would have been stamped and referred to Miss Cumins. By checking the attendance records, Mr. Goodyear knew he was in the office on January 25, 26, 29 and 30, 1968.

Miss Cumins testified that it was her responsibility to verify that Second Division cases covered by an abandonment or a decision and judgment resulting therefrom had been properly abandoned. She would first determine if the case were one she herself had abandoned. If not, she would take it to Mr. Deem or Mr. McKenna for review and determination as to whether the case had been properly abandoned. She had no recollection of having received a copy of the judgment herein in her normal practice. From the attendance records, she knew she had been in the office on January 25, 26, and 30, 1968.

Mr. McDermott testified that he did all the work in cases involving Intra-Mar Shipping Co., and that he had been instructed to abandon a number of reappraisement appeals, but not protests. In his affidavit in support of the original motion herein, Mr. McDermott stated that

his secretary had typed an abandonment for the instant protest by mistake and that he had signed the same with complete reliance on his secretary to carry out his specific instructions as to abandonments in reappraisements. There was no intention to abandon the protest herein.

Neither Mr. McDermott nor Mr. Deem nor Mr. McKenna had any recollection or any record of having received a copy of the decision and judgment herein, although they were in the office during the period January 24 to 30, 1968. The fact that there was such a judgment first came to their attention around October 4, 1968. At that time Mr. McKenna checked his court calendar and found a notation to request a continuance of this case to March or April. Mr. McDermott stated that he had searched his files but had found no copy of the judgment therein. Had he received it in the normal course, he would have moved for a rehearing because the case was subject to disposition by stipulation.

Testimony was adduced from a number of court employees as to the mailing procedures on or about January 24, 1968.

Mr. Richard J. DeMarco, Chief Deputy Clerk, called as a witness by both plaintiff and defendant, testified that from January 1967 to February 1, 1968, it was not the practice of the court to note on the original decision the fact of mailing. Previously, a stamp had been placed on the original decision stating that a copy had been sent to the parties, and this practice was again followed after February 1, 1968. The witness did not know of any directive dealing with the cessation of stamping on January 1, 1967 or that the procedure had been discontinued. To his knowledge there had been no change in the actual practice of sending copies of decisions and judgments to all parties, except that in January 1967 the mailing was done by personnel of the Stenographic and Typing Division, on January 24, 1968, it was done by the personnel of the sample room, and after February 1, 1968 it was done by Mr. Giorno of the Protest Division. In the early part of 1968 the court was preparing to move to its new location and employees including temporary help were assigned from one division to another because of the heavy caseload.

The witness did not know of his own knowledge on what date the instant judgment was mailed, assuming it was mailed, and did not know whether judgments were invariably mailed on the same day that they were dated.

Other court employees who testified were Joseph A. Marski, who was Assistant Chief, Protest Division, in the latter part of 1967; Max Autenrieth, Deputy Clerk in Charge of the Stenographic and Typing Division; Robert E. Kelleher, promulgator for the Stenographic Divison; and Joseph Verdi, who was in charge of the sample room in January of 1968.

According to the record, when a written abandonment is received by the court, the case number on the official calendar is marked "Abandoned"; the calendar card is taken from the files, marked "Abandoned" and placed inside the jacket. A check slip is made out indicating the Division, court number, judge, and abandoned status of the case, and the papers are sent to the Stenographic and Typing Division. There the case is assigned to a typist to prepare the decision and judgment, which is then distributed to the judges for signature. Subsequently, the judgment is promulgated by one of several persons in the Stenographic and Typing Division, usually Mr. Kelleher.

Mr. Kelleher testified that he was working on January 24, 1968 and that in the normal course he would have handled the promulgation of all decisions and judgments on that day. However, if there were a great many of them, one of the girls might have helped. Mr. Kelleher did not remember whether he had done all the promulgations on January 24th, nor did he remember anything about this particular case.

It appears from the testimony of Mr. Autenrieth and the check slips and worksheet of January 24, 1968 (exhibit B), that promulgation of the decision and judgment herein and 15 others was handled by Mrs. Veronica Hollywood, a typist in the Stenographic and Typing Division. Mr. Autenrieth testified that he gave the original decision herein and the check slip to Mrs. Hollywood for processing; that the practice of his office was for her to take the jacket out of the file, stamp the card therein "Decided", date the decision and judgment, stamp the Clerk's name on the certified copy, attach envelopes addressed to the plaintiff or his attorney, the Assistant Attorney General, and the District Director or Regional Commissioner of Customs, and then to hand deliver them to the sample room. The seal would be put on the original and some of the copies in the sample room. Mrs. Hollywood would then bring back the original and place it in the decision book and put the 4th and 5th carbons in the jacket. To the best of Mr. Autenrieth's knowledge this was done in connection with the decision and judgment herein. He had, however, no responsibility for the sample room and did not know if the judgment had been mailed.

Mr. Verdi testified that about 20 to 25 decisions and judgments were brought to his office every day, mainly by Mr. Kelleher but occasionally by Mrs. Hollywood or Mrs. Gersten. When the papers come to the sample room, those in each case are clipped together. The three copies of the judgment which are to be sealed are left as they are, and the other copies are folded over, so that the seal will not be put on the copies on which the seal is not necessary. Mr. Verdi affixed the seal as required. Addressed envelopes are attached to the copies, and he would put a copy in each enevelope and seal it. There

was no assigned responsibility for him to verify the connection between the addressee on the envelope and the party involved in the particular paper, but he did this as a normal practice and suggested that the employees under his supervision do so. Mr. Verdi and Mr. Barry mailed the envelopes containing copies of decisions and judgments by putting them in the mail chute or putting them on a wagon and taking them to the lobby where there were mail pouches. On occasion, messengers would also do this. Decisions and judgments are mailed out on the same day they are received in his office. Mr. Verdi did not recall inserting this particular judgment in an envelope and mailing it to Brooks & Brooks, and had no way of knowing whether he or anyone else mailed it. Had he been busy, he would have asked others to insert a particular paper in an envelope and mail it.

According to the record, Mr. Verdi had supervision of three employees in the sample room in January of 1968, but others were working there, stamping and putting file numbers on cases received from the collector's office and handling books, packing, and unpacking preparatory to moving.

In our view this case is governed by *United States* v. *International Importers, Inc., supra.* The evidence supports a finding of non-receipt by plaintiff's attorneys. The practice in the office of Brooks & Brooks was for all mail to be delivered to Mr. Goodyear, whether or not initially opened by him. Thereafter it was routed to the attorney in charge of the particular matter. None of the attorneys who might in the normal course have received the decision and judgment herein had any recollection of having received it or of any notation thereof. Since all Intra-Mar matters were handled by Mr. McDermott, the decision and judgment herein would almost certainly have come into his hands had it been received. We conclude that plaintiff's evidence casts reasonable doubt that a copy of the decision and judgment was ever received by plaintiff's attorneys and that these proofs are sufficient to rebut the general inference of fact as to receipt of a mailed copy, and thereupon to shift to the Government the burden of going forward with evidence to establish that a copy was mailed. *United States* v. *International Importers, Inc., supra,* at p. 51.

The evidence presented on this point shows that at the time it was not the practice of court employees to place a notation on the original decision and judgment stating that copies had been mailed. None of those called to testify had any recollection of this matter. The documentary evidence (exhibit B) and the testimony of Mr. Autenrieth established at most that copies of the decision and judgment herein plus addressed envelopes were prepared and delivered to the sample room. The evidence does not disclose any precise mailing procedure in

the sample room. It appears that because of a heavy caseload and the preparations for moving, conditions there were somewhat chaotic. Sometimes mail was dropped into the chute and sometimes it was bundled and taken down to the lobby of the building and placed in mail pouches. Mr. Verdi was in charge, but three or four people handled mail. No one was required to check whether the envelopes were properly addressed to the persons entitled to copies of decisions and judgments. There was no way of establishing who was responsible for mailing the decision and judgment herein.

Thus, the Government has not met the requisites of proof set forth in *United States ex rel. Helmecke* v. *Rice, Post Commander*, 281 Fed. 326 (1922), quoted in *United States* v. *International Importers, Inc., supra*, as follows:

> The better rule, and that which seems to be established by the weight of authority, is that in the absence of direct evidence there must be proof of an invariable custom or usage in an office of depositing mail in a certain receptacle, that the letter in question was deposited in such receptacle, and in addition there must be testimony of the employee, whose duty it was to deposit the mail in the post office, that he either actually deposited that mail in the post office, or that it was his invariable custom to deposit every letter left in the usual receptacle, and that he never failed in carrying out that custom. * * *

In *United States* v. *Getz Bros. & Co., supra*, relied on by the Government, there was testimony by the person preparing the notices that he mailed them personally, always having a witness, on the same day he stamped the date thereon. In both the *International Importers* case and the *Getz* case, our court of appeals expressed the view that where reasonable doubt is cast that notices were received and the burden of proof placed on the Government is not sustained, "the intended ends of justice, as contemplated by Congress, will be best served by preserving the right of the importer to appeal the increased appraisal and to have its day in court."

On the record presented here, we find that a reasonable doubt has been cast on receipt of a copy of the decision and judgment by plaintiff's attorneys and on the sending of such a copy by the Customs Court as contemplated by Rule 23(b). Plaintiff's motion was made within a reasonable time after discovery of the judgment. Under the circumstances, we hold that the ends of justice will best be served by granting plaintiff's motion to vacate and set aside the decision and judgment herein, to set aside the abandonment of the protest, and to reinstate the case for all purposes.

It will be so ordered.